IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO

**Civil Action No.**

**GREGORY MOORE,**

 Plaintiff,

v.

**PIE INSURANCE SERVICES, INC.,**
a District of Columbia corporation,

 Defendant.

---

## COMPLAINT

---

The Plaintiff, Greg Moore ("Moore" or "Plaintiff"), by and through his undersigned counsel at HKM Employment Attorneys, LLP, pursuant to the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.* ("CWA") and Colorado common law, as his Complaint and Jury Demand against the Defendant, Pie Insurance Services, Inc. ("Pie Insurance," "Company" or "Defendant"), states as follows:

### NATURE OF THE CASE

1. Pie Insurance violated the CWA by failing to pay Moore his 2022 bonus payment of approximately $14,850.00, which was and is "wages or compensation" that he earned under the CWA. *See* C.R.S. § 8-4-101(14)(a); *see also Rohr v. Ted Neiters Motor Co.*, 758 P.2d 186, 188 (Colo. App. 1988) (bonus was "earned and, therefore, became vested and determinable as of the date of termination, even though not due and payable for… months

1

thereafter"); *see also* **Exhibit 1**: Colo. Dept. of Lab. and Employment, Interpretive Notice § Formal Opinion #17 (available at https://cdle.colorado.gov/infos).

2. Moore sent Pie Insurance a written demand for payment of wages/compensation on or around February 13, 2023, but the Company has not tendered any payment to him in response to that demand. *See* C.R.S. § 8-4-109(3)(b) (I) (imposing mandatory penalties for failure to tender wages within 14 days of written demand).

3. At all times relevant to this Complaint, Pie Insurance knew or through the exercise of reasonable diligence should have known that its failure to pay Moore his earned wages/compensation violated the CWA. Its violations were therefore willful as a matter of law. *See* C.R.S. § 8-4-109(3)(b)(II) (imposing additional penalties for willful violations).

4. In the alternative to his CWA claims, Moore alleges that Pie Insurance breached its implied covenant of good faith and fair dealing by refusing to pay him $14,850.00. *See Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1019 (10th Cir. 2018) (Under Colorado law, covenant of good faith and fair dealing applies "when one party has discretionary authority to determine certain terms of the contract")

5. Moore seeks unpaid wages or actual damages, stautuory penalties, reasonable attorneys' fees, and the costs he has incurred as a result of the Defendant's actions. *See* C.R.S. §§ 8-4-109(3), 8-4-110(1).

## PARTIES

6. Moore is a Colorado citizen who is domiciled at 1688 S. Adams Street, Denver, Colorado 80210.

7. At all times relevant to this Complaint, Moore was an "employee" entitled to the protections of the CWA. *See* C.R.S. § 8-4-101(5).

8. Pie Insurance is a District of Columbia corporation with its principal office at 1615 L Street NW, Suite 620, Washington, D.C. 20036.

9. At all times relevant to this Complaint, the Defendant did substantial business in Colorado and was an "employer" under the CWA. *See* C.R.S. § 8-4-101(6).

## JURISDICTION AND VENUE

10. Moore hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000.00.

12. Venue is proper before this Court because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in Colorado. *See* 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

13. Moore hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

14. Moore was employed by Pie Insurance as a Technical Account Manager from May of 2021 to January of 2023, when he voluntarily resigned.

15. Pursuant to the written and oral agreements and understandings between Moore

3

and Pie Insurance, Moore's rate of pay during his employment was $110,000.00 per year, plus an annual bonus based on his individual performance and on the performance of Pie Insurance as a whole.

16. On March 7, 2022, Moore received a bonus of $6,300.00. Moore's bonus was prorated based on his start date of May 21, 2021; thus, his payout was approximately half of what he would have received if he had worked at Pie Insurance the entire calendar year.

17. During his employment with Pie Insurance, Moore performed his job exceptionally well and lived up to the Company's core values of Integrity, Ownership, Simplicity, and Service. For example, in Moore's 2022 End of Year Review, his manager indicated that Moore had "been the key point person on our team for all API related issues" and his efforts "led to an increase in the efficiency and productivity of the team." In addition, it was noted that Moore had "always been dedicated to providing excellent customer service," and "consistently gone above and beyond to ensure that our clients are satisfied…"

18. Moore resigned from Pie Insurance on January 12, 2023 with his last day at the Company scheduled for January 27, 2023.

19. On January 26, 2023, after his exit interview with Philip Botha, People Partner, and extensive review of the Comp 201 and EOY Review Training information, Moore emailed Pie Insurance's HR/People Team to clarify when he could expect his 2022 bonus payment.

20. On January 27, 2023, Jen Straus, VP of People Operations, confirmed via email that the eligibility cutoff for 2022 bonuses was October 1, 2022. Ms. Straus wrote that Pie Insurance does not pay out bonuses early "due to voluntary separation" and the Company does

not "have the practice of paying out bonuses to previous employees (those who are not employed on the bonus payout date)."[1]

21. Also on January 27, 2023, Moore attended a Company All Hands webinar where Pie Insurance internally published its 2022 Company Scorecard. Additionally, Pie Insurance CEO and Co-Founder John Swigart announced that the Company's 2022 bonus pool was funded at 90% of its bonus target.

22. Because Pie Insurance hit 90% of its bonus target for 2022, Moore was and is entitled to an annual bonus of $14,850.00 ($110,000.00 x 15% x 90%).

23. On February 13, 2023, Moore sent a written demand to the Pie Insurance Human Resources Team, requesting immediate payment of his bonus and citing the Colorado Wage Act ("CWA"). *See* C.R.S. § 8-4-101(14)(a).

24. In its February 21, 2023 response to Moore's demand, the Company's People Team asserted that its bonus program is "discretionary" and that Pie Insurance "maintains the right not to pay the bonus and to determine the bonus amount up to the day or near the day the bonuses are actually paid."[2]

25. Pie Insurance paid out its 2022 bonuses on March 15, 2023, but did not pay any bonus to Moore.

---

[1] Such a policy is a patent violation of the CWA. *See Nieto v. Clark's Market, Inc.*, 2021 CO 48 (holding that employer policy of denying earned wages based on termination/resignation was void under CWA).

[2] Under the CWA, "a bonus is not discretionary if the fact that it would be paid, and how much, was set in advance." *See* **Ex. 1** at 5.

26. At all times relevant to this Complaint, Pie Insurance knew or should have known that it was required to pay Moore his bonus that he earned for his work in 2022, but failed to do so. As such, the Company's actions were willful.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE COLORADO WAGE ACT

## C.R.S. § 8-4-101 *et seq.*

27. Moore hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

28. The CWA requires employers to pay all "wages" and "compensation" earned by employees in a timely manner. C.R.S. § 8-4-103(1)(a). The CWA defines "wages" and/or "compensation" to include: "(I) All amounts for labor or service performed by employees [that are] earned, vested, and determinable;" (II) "Bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement;" "(III) vacation pay earned in accordance with the terms of any agreement;" and (IV) "'Paid sick leave' as provided in [the Healthy Families and Workplaces Act]." C.R.S. § 8-4-101(14)(a).

29. A bonus or commission is wages/compensation due to an employee if/when it is: (A) "earned," meaning that the employee performed the work they had to perform; (B) "in accordance with the terms of any agreement," meaning that any *lawful* conditions that had to be met before the bonus would be paid were in fact met; and (C) "determinable," meaning that the dollar amount of the bonus/commission was capable of being calculated. *See* C.R.S. § 8-4-101(14)(a)(I) and (II); **Ex. 1** at 1; *see also Nieto*, 2021 CO 48 ¶ 18 (defining "earned" as

6

meaning "owed as a return for… work done or services rendered").

30. An employer may not refuse to pay wages/compensation earned by an employee merely because the employee is no longer employed at the time of payment. *See Nieto*, 2021 CO 48 ¶¶ 10-24; C.R.S. § 8-4-121 ("Any agreement… purporting to waive or to modify [an] employee's rights in violation of this article shall be void"); *see also Hallmon v. Advance Auto Parts, Inc.*, 921 F. Supp.2d 1110, 1120 (D. Colo. 2013) (policy requiring that employee "must be an active Team Member at time of payout" improperly introduced "a condition for the payment of bonuses that otherwise have already vested and are already determinable").

31. Employers who violate the CWA by failing to pay wages/compensation earned by an employee, and who continue to violate the Act by failing to "tender" such wages/compensation within 14 days of receiving a "written demand" are liable for either: (A) treble damages, if the employee is not able to show that the employer's wage violation was "willful;"[3] or (B) quadruple damages, if the employee *is* able to show that the violation was willful. C.R.S. § 8-4-109(3)(a)-(b); *see Graham v. Zurich Am. Ins. Co.*, 2012 COA 188, ¶¶ 12-14 ("penalties are mandatory if (1) the employee makes a written demand for payment and (2) the defendant does not pay within fourteen days").

32. In addition, employers who violate the CWA are presumptively liable for attorney's fees and costs incurred by the employee in obtaining their unpaid wages. C.R.S. § 8-4-110(1)(b)(I); *Lester v. Career Bldg. Acad.*, 338 P.3d 1054, 1058 (Colo. App. 2014)

---

[3] A violation is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *See Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011); C.R.S. § 8-4-109(3)(b)(II).

7

(holding that CWA contains rebuttable presumption that prevailing employee is entitled to fees and costs).

33. At all times relevant to this Complaint, Moore was an "employee" entitled to CWA protections. *See* C.R.S. § 8-4-101(5).

34. At all times relevant to this Complaint, Pie Insurance was an "employer" subject to the requirements of the Colorado Wage Act. *See* C.R.S. § 8-4-101(6).

35. Plaintiff's "wages or compensation" included an annual salary and an annual bonus based on his performance and the performance of the company. *See* C.R.S. § 8-4-101(14)(a).

36. Moore earned his 2022 bonus by meeting his individual performance goals for the year. Moreover, the Company's CEO confirmed in early 2023 that the Company met its goals for 2022 and the Bonus pool was funded at 90%.

37. The Defendant violated Plaintiff's rights under the CWA by failing to pay Moore his 2022 bonus on March 15, 2023.

38. At all times relevant to this Complaint, Pie Insurance was aware of the requirements of the CWA and nevertheless failed to pay Moore's wages and compensation. As such, the Company's violation of the CWA was willful.

39. Based on the Defendant's willful violations of the CWA, Pie Insurance is liable to Moore for unpaid wages, mandatory penalties, additional penalties, reasonable attorney's fees and costs. *See* C.R.S. §§ 8-4-109(3), 8-4-110.

## SECOND CLAIM FOR RELIEF

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

40. Moore hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

41. In Colorado, every agreement that gives one party discretion to determine terms of the agreement includes "an implied covenant of good faith and fair dealing." *Kirkland v. Robert W. Baird & Co.*, No. 18-CV-02724-MSK-SKC, 2020 WL 1452165, at *8–9 (D. Colo. Mar. 25, 2020) (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)).

42. In addition and as an alternative to Moore's CWA claims, Pie Insurance breached its implied duty of good faith and fair dealing by refusing to pay Moore's 2022 bonus. *See id*. at 2020 WL 1452165, at *8–9 (discussing elements of breach of implied covenant of good faith and fair dealing).

43. Based on the written and oral agreements and understandings between Moore and Pie Insurance, Moore reasonably expected to receive his annual bonus if/when he performed sufficiently well and the Company performed sufficiently well.

44. The Defendant breached its implied covenant of good faith and fair dealing by withholding Moore's 2022 bonus in a manner that was entirely unfair and could not have been expected by the Plaintiff.

45. As a result of the Defendant's bad faith and unfair dealing, Moore has suffered harm, for which Pie Insurance is liable.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully asks that the Court enter judgment in his favor and against the Defendant, and to:

A. Enter a declaratory judgement condemning the Defendant's willful violations of the Colorado Wage Act;

B. Award the Plaintiff:

   a. Unpaid wages and/or actual damages in an amount to be determined at trial;

   b. Mandatory statutory penalties in an amount equal to two times the Plaintiff's unpaid wages, pursuant to C.R.S. § 8-4-109(3)(b)(I);

   c. Additional penalties in an amount equal to the Plaintiff's unpaid wages, pursuant to C.R.S. § 8-4-109(3)(b)(II) and based on the Defendant's willful violation of the Colorado Wage Act;

   d. The Plaitintiff's reasonable attorney's fees and costs; and

C. All other and further relief that the Court deems to be equitable and just.

Respectfully submitted on this 21st day of April, 2023.

                               **HKM EMPLOYMENT ATTORNEYS LLP**

                               By: */s/ Adam M. Harrison*
                               Adam M. Harrison
                               Claire E. Hunter
                               HKM Employment Attorneys LLP
                               730 17th Street, Suite 750
                               Denver, Colorado 80202
                               720.255.0370
                               aharrison@hkm.com

chunter@hkm.com

*Counsel for the Plaintiff*

11